IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ABDON DANILO BEGAY MAYANCHA,<br><br>Petitioner,<br><br>vs.<br><br>MARKWAYNE MULLIN, in their official capacity as Secretary of the United States Department of Homeland Security; TODD BLANCHE, in their official capacity as Acting Attorney General of the United States; DAVID VENTURELLA, in their official capacity as Acting Director of the United States Immigration and Customs Enforcement; DAVID EASTERWOOD, in their official capacity as Acting Field Office Director, St. Paul Field Office, United States; and KOLBY FOOTE, in their official capacity as Warden, McCook Detention Center;<br><br>Respondents. | **4:26CV3322**<br><br>**MEMORANDUM AND ORDER ON VERIFIED PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241** |

On September 22, 2026, through counsel, Petitioner Abdon Danilo Begay Mayancha, a citizen of Ecuador, filed a Verified Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241. Filing 1 at 1 (¶ 1). In his Petition, Begay Mayancha challenges his detention by the Department of Homeland Security (DHS) at the McCook Detention Center in McCook, Nebraska, for more than 19 months despite being paroled into the United States in December 2023 and then granted asylum by an Immigration Judge (IJ) on June 9, 2025. Filing 1 at 1 (¶ 1).[1] He asserts that his detention is in violation of his Fifth Amendment due process rights. Filing 1 at 10–15. For the

[1] Begay Mayancha alleged in the cited paragraph of his Petition that the IJ's asylum decision was on June 17, 2025, Filing 1 at 1 (¶ 1). However, he elsewhere alleged that the date of the IJ's decision was June 9, 2025, *see* Filing 1 at 2 (¶ 3), and that date is substantiated by a copy of the IJ's decision filed with Begay Mayancha's Petition. Filing 1-3.

reasons stated below, Begay Mayancha's Petition is denied without a hearing because it appears from the Petition that he is not entitled to a writ of habeas corpus. 28 U.S.C. § 2243.

## I. INTRODUCTION

### A. Factual Background

The factual background here is drawn primarily from Begay Mayancha's Petition. It is then supplemented where appropriate with facts drawn from the documents attached to his Petition and the documents attached to the Federal Respondents' return.[2]

Begay Mayancha alleges that he is a citizen and national of Ecuador who "fled after being violently attacked resulting in life-long damage to his spine and facing persecution based on his indigenous ethnicity." Filing 1 at 3 (¶ 12). He alleges that he sought lawful entry into the United States at the El Paso, Texas, port of entry on December 2, 2023, and that he was paroled into the United States seeking asylum and served with a Form I-862 Notice to Appear charging him with an immigration violation. Filing 1 at 5 (¶ 19).[3] Federal Respondents' declarant, Deportation Officer Daniel Archer, clarifies that Begay Mayancha was paroled on December 2, 2023, pursuant to the Immigration and Nationality Act (INA) section 212(d)(5), codified at 8 U.S.C. § 1182(d)(5),

---

[2] Begay Mayancha attached to his Petition his Form I-213 Record of Deportable/Inadmissible Alien dated February 25, 2025, Filing 1-1; an Order of the Immigration Judge dated June 9, 2025, granting him asylum, Filing 1-2; his Form I-862 Notice to Appear dated December 2, 2023, Filing 1-3; and his Release/Hold Order from the Minnesota District Court for the County of Dakota, dated February 24, 2025, releasing him without bail pending trial on state charges, Filing 1-4. Federal Respondents filed a Declaration of Deportation Officer Daniel Archer, Filing 9; a duplicate copy of Begay Mayancha's Form I-862 Notice to Appear, Filing 9-1; and a Form I-200 Warrant for Arrest of Alien for Begay Mayancha dated February 14, 2025, Filing 9-2. The State Respondent filed no additional documents with his Return, Filing 10.

[3] The Notice to Appear charges Begay Mayancha as subject to removal from the United States under the following provision of law:

> 212 (a) (7) (A) (i) (I) of the Immigration and Nationality Act (Act), as amended [8 U.S.C. § 1182(a)(7)(A)(i)(I)], as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the Act.

Filing 1-3 at 4.

"with an expiration date of December 2, 2025." Filing 9 at 3 (¶ 13). Begay Mayancha subsequently obtained work authorization and lived and worked in Burnsville, Minnesota, until February 24, 2025. Filing 7 at 5 (¶ 20).

Begay Mayancha alleges that Federal Respondents placed him into immigration detention on February 24, 2025, following his release from pre-trial detention on "a pending misdemeanor charge" without a requirement to post monetary bail. Filing 1 at 5 (¶ 21); Filing 1-4 (state court release order). The DHS Form I-213 Record of Deportable/Inadmissible Alien attached to Begay Mayancha's Petition clarifies that "[o]n February 14, 2025, the Burnsville [Minnesota] Police Department arrested BEGAY for domestic assault." Filing 1-1 at 3. Begay Mayancha alleges that after he was detained by DHS, he had a hearing in immigration court regarding his removal on June 9, 2025, after which the immigration judge (IJ) granted him asylum. Filing 1 at 6 (¶ 24); Filing 1-2 (IJ decision). However, he was not released from custody because DHS appealed the grant of asylum to the Board of Immigration Appeals (BIA). Filing 1 at 6 (¶¶ 25–26). Begay Mayancha alleges that over a year after DHS filed its appeal, DHS filed a motion to remand the case to the IJ, and the BIA remanded for further proceedings without ruling on the merits. Filing 1 at 6 (¶ 26); Filing 9 at 3–4 (¶¶ 18, 22).

DO Archer avers that although both parties briefed the appeal to the BIA, the BIA placed the case on hold on April 9, 2026, to update background checks. Filing 9 at 4 (¶¶ 19–20). DO Archer avers that the updated background checks revealed that Begay Mayancha had a conviction in Ecuador for trafficking in a controlled substance. Filing 9 at 4 (¶ 21). This prompted DHS to file its motion to remand the immigration case to the IJ to reconsider the case in light of this new information. Filing 9 at 4 (¶ 22). DO Archer avers further that Begay Mayancha had a hearing on

his asylum application on October 5, 2026, and that Begay Mayancha's immigration case is pending a decision from the IJ. Filing 9 at 4 (¶ 24).[4]

Begay Mayancha has been in continuous immigration detention since February 24, 2025. Filing 1 at 2 (¶ 7). Begay Mayancha is currently detained in civil immigration custody at the McCook Detention Center in McCook, Nebraska. Filing 1 at 2 (¶ 7); Filing 9 at 4 (¶ 25). He alleges that he is entitled to notice and an opportunity to respond prior to the revocation of parole to comport with due process. Filing 1 at 6 (¶ 23). He also alleges that he will remain detained for many more months or years in violation of his due process rights as his immigration case works through a remand and possible further proceedings. Filing 1 at 6 (¶ 27).

**B. Procedural Background**

Begay Mayancha filed his Verified Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 on September 22, 2026. Filing 1. In his Petition, he alleges that he was improperly detained by DHS after he was released on bail by the Minnesota state court because his parole into the United States entitled him to protection under the due process clause. Filing 1 at 5 (¶ 22) (citing *Sandhu v. Mull*in, No. 7:26CV5009, 2026 WL 11446643 (D. Neb. Sept. 11, 2025), and *Morrissey v. Brewer*, 408 U.S. 471 (1972)).

More specifically, in Count One of his Petition, Begay Mayancha asserts "Violation of Fifth Amendment Right to Due Process: Re-detention." Filing 1 at 10. The essence of this claim is that Respondents restricted his liberty interest arising from his parole and order granting asylum by detaining him without constitutionally sufficient procedures, as measured by *Mathews v. Eldridge*, 424 U.S. at 319 (1976). Filing 1 at 10 (¶¶ 41–44). He also asserts that his detention is not likely to end in the reasonably foreseeable future, so that his detention is not reasonably related

[4] The record still does not contain any information about the IJ's decision after the October 5, 2026, hearing.

to the purpose of removal, also in violation of due process. Filing 1 at 11 (¶ 46) (citing *Zadvydas v. Davis*, 533 U.S. 678 (2001)). In Count Two, Begay Mayancha asserts a claim of "Violation of Fifth Amendment Right to Due Process: Unilateral Detention after Asylum." Filing 1 at 11. The essence of this claim is that even though he was granted asylum by the IJ on June 9, 2025, he was not released. Filing 1 at 11–12 (¶¶ 49–50). He asserts further that DHS did not seek a stay of the IJ's decision pending appeal. Filing 1 at 12 (¶ 52). Thus, he alleges that the unilateral decision to continue detention lasting over a year amounts to a violation of the due process clause. Filing 1 at 12 (¶ 54).

Begay Mayancha's Prayer for Relief seeks an order of the Court to do all the following:

a. Assume jurisdiction over this matter;

b. Issue an order preventing Respondents from removing Petitioner from the jurisdiction;

c. Declare that Petitioner's ongoing detention violates the Due Process Clause of the Fifth Amendment;

d. Issue a Writ of Habeas Corpus ordering Respondents to release Petitioner immediately;

e. In the alternative, issue a Writ of Habeas Corpus ordering Respondents to have a bond hearing at which the government must justify Petitioner's continued detention by clear and convincing evidence;

f. Award Petitioner attorney's fees and costs under the Equal Access to Justice Act, and on any other basis justified under law; and

g. Grant any further relief this Court deems just and proper.

Filing 1 at 13 (Prayer for Relief).

On October 1, 2026, the Court entered an Order to Show Cause on Begay Mayancha's Petition. Filing 6. In the Order to Show Cause, the Court *inter alia* directed Begay Mayancha to serve his Petition and a copy of the Order to Show Cause on Respondents without delay and to file proof of such service within 24 hours of effecting such service; ordered Respondents to make

returns certifying the true cause of Begay Mayancha's detention and why his Petition should not be granted not later than five business days after receiving the Petition and Order to Show Cause; and directing Begay Mayancha to file any reply within three business days after Respondents filed their returns. Filing 6 at 5–6. The Order also stated, "Upon the filing of Respondents' return(s) and Begay Mayancha's reply, the Court will determine whether or not to set a hearing on this matter prior to disposition."

On October 7, 2026, Federal Respondents filed their Return disputing Begay Mayancha's entitlement to any habeas relief. Filing 7. On October 9, 2026, the State Respondent—Kolby Foote, the Warden of the McCook Detention Center—filed his Return. Filing 10. The State Respondent states that because his is made a party to this action only because he is Begay Mayancha's physical custodian, he "does not take a position on the substantive issues raised in the Petition, nor does Warden take a position on whether Petitioner's writ should or should not be granted." Filing 10 at 1–2. Begay Mayancha filed a Reply on October 13, 2026. Filing 11.

After reviewing the parties' filings, the Court now concludes that no hearing is required because it appears from the face of Begay Mayancha's Petition that he is not entitled to a writ of habeas corpus. 28 U.S.C. § 2243; *Crayton v. United States*, 27 F.4th 652, 656 (8th Cir. 2022) ("Under 28 U.S.C. § 2243, '[a] court, justice or judge entertaining an application for a writ of habeas corpus' must schedule a hearing on the matter unless it is clear from the application that a petitioner is not entitled to relief." (quoting 8 U.S.C. § 2243)); *see also Ruiz v. Norris*, 71 F.3d 1404, 1406–07 (8th Cir. 1995) (explaining that "an evidentiary hearing [in a habeas case] is unnecessary and not required in cases 'where the petitioner's allegations, even if true, fail to state a claim upon which habeas relief can be granted'" (quoting *Amos v. State*, 849 F.2d 1070, 1072 (8th Cir. 1988))).

## II. LEGAL ANALYSIS

### A. Standards for Habeas Relief under 28 U.S.C. § 2241

The habeas statute at issue here provides in pertinent part as follows:

> (a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. The order of a circuit judge shall be entered in the records of the district court of the district wherein the restraint complained of is had.
>
> * * *
>
> (c) The writ of habeas corpus shall not extend to a prisoner unless--
>
> > (1) He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof; or
> >
> > (2) He is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States; or
> >
> > (3) He is in custody in violation of the Constitution or laws or treaties of the United States; or
> >
> > (4) He, being a citizen of a foreign state and domiciled therein is in custody for an act done or omitted under any alleged right, title, authority, privilege, protection, or exemption claimed under the commission, order or sanction of any foreign state, or under color thereof, the validity and effect of which depend upon the law of nations; or
> >
> > (5) It is necessary to bring him into court to testify or for trial.

28 U.S.C. § 2241(a), (c). "[A] habeas court is 'not bound in every case' to issue the writ." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (quoting *Ex parte Royall*, 117 U.S. 241, 251 (1886)). Instead, "[t]he habeas statute provides only that a writ of habeas corpus '*may* be granted.'" *Id*. (quoting 28 U.S.C. § 2241(a), with emphasis added by the Supreme Court).

As the United States Supreme Court explained, "In enacting the present Title 28 of the United States Code [in 1948], Congress largely recodified the federal courts' pre-existing habeas authority in §§ 2241 and 2243, which, respectively, confer the power to grant the writ and direct the issuing court to 'dispose of the matter as law and justice require.'" *Jones v. Hendrix*, 599 U.S.

465, 473 (2023) (quoting 62 Stat 869, 964–65). The Supreme Court explained further, "Habeas is at its core a remedy for unlawful executive detention." *Manaf*, 553 U.S. at 693 (citing Hamdi v. Rumsfeld, 542 U.S. 507, 536 (2004) (plurality opinion)). To put it another way, "Habeas has traditionally been a means to secure *release* from unlawful detention. . . ." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) (emphasis in the original).

The core concern of habeas as a means to challenge detention is apparent from the language of § 2241. Under the statute, the writ does not extend to a prisoner unless he or she falls into one of the categories listed in § 2241(c). *See* 28 U.S.C. § 2241(c) ("The writ of habeas corpus shall not extend to a prisoner unless" the prisoner falls into one of the listed categories). One such category—and the only one at issue here—is that the prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

The Supreme Court has recognized that § 2241(c)(3) confers on the district courts jurisdiction to hear habeas corpus challenges by aliens to the legality of their detention. *Rasul v. Bush*, 542 U.S. 466, 483–84 (2004) ("[Alien] Petitioners contend that they are being held in federal custody in violation of the laws of the United States. . . . Section 2241, by its terms, requires nothing more."); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) ("We note at the outset that the primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear these cases," which were brought by aliens challenging their detention after they were ordered removed (citing 28 U.S.C. § 2241(c)(3))). "The typical remedy for such detention [under § 2241(c)(3)] is, of course, release." *Munaf*, 553 U.S. at 693 (citing *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973), which states, "[T]he traditional function of the writ is to secure release from illegal custody").

District Courts in this Circuit and elsewhere agree that a habeas petitioner under § 2241 bears the burden of demonstrating by a preponderance of the evidence that his or her detention is unlawful. *See Maldonado v. Olson*, No. 25-CV-3142 (SRN/SGE), 2025 WL 2374411, at *4 (D. Minn. Aug. 15, 2025) (collecting cases).

The Court will apply these standards to Begay Mayancha's claims in turn.

### B. Begay Mayancha's Due Process Claims Do Not Require Application of a Balancing Test

A central contention in support of Begay Mayancha's due process claims in his Petition is that his parole and his asylum order provide him with a liberty interest that requires a due process balancing test such as the one under *Mathews* or *Sandhu v. Mullin*, No. 7:26CV5009, 2026 WL 1146643 (D. Neb. April 28, 2026)), *see, e.g.*, Filing 1 at 9 (¶ 36–38). The Court does not find it necessary or appropriate to consider Begay Mayancha's procedural due process claims by applying a balancing test under *Mathews* or *Sandhu*.

As the Eighth Circuit explained in in *Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024),

> [In *Demore v. Kim*, 538 U.S. 510 (2003)), the Supreme Court] reaffirmed its "longstanding view that the [g]overnment may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Demore*, 538 U.S. at 526, 123 S.Ct. 1708. The reason, according to the Court, was that "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Id*. at 522, 123 S.Ct. 1708; *accord Mathews v. Diaz*, 426 U.S. 67, 79–80, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976). In other words, the government has more flexibility when dealing with immigration. *See, e.g., United States v. Quintana*, 623 F.3d 1237, 1242 (8th Cir. 2010) (explaining that the "constitutional[ ] valid[ity]" of detention pending deportation means that the usual limits on *Terry* stops "do[ ] not apply to ... administrative arrest[s] based upon probable cause that an alien is deportable"); *see also Wong Wing v. United States*, 163 U.S. 228, 235, 16 S.Ct. 977, 41 L.Ed. 140 (1896) (explaining that the power to deport "would be vain if those accused could not be held in custody pending [an] inquiry into their true character and while arrangements were being made for their deportation").

*Banyee*, 115 F.4th at 931.

The Eighth Circuit Courts of Appeals observed that in *Zadvydas v. Davis*, 533 U.S. 678, 697 (2001), the Supreme Court distinguished between definite and indefinite detention. *Banyee*, 115 F.4th at 932. The Eighth Circuit then stated,

> These cases leave no room for a multi-factor "reasonableness" test. It is true, as Banyee has pointed out, that deciding what process is due ordinarily requires a form of interest balancing. *See Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). But *Zadvydas* and *Demore* have already done whatever balancing is necessary. *See, e.g., Zadvydas*, 533 U.S. at 682, 701, 121 S.Ct. 2491 (linking a "'reasonable time' limitation" to "the likelihood of removal in the reasonably foreseeable future"); *Demore*, 538 U.S. at 528, 123 S.Ct. 1708 (explaining that, "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means," so it is sufficient if "detention necessarily serves the purpose of preventing deportable aliens from fleeing prior to or during their removal proceedings"). Indeed, the lead dissent in *Demore* advocated for the type of "individual determination" Banyee now seeks, presumably under a *Mathews*-type inquiry. 538 U.S. at 549–58, 561 n.16, 123 S.Ct. 1708 (Souter, J., concurring in part and dissenting in part); *cf. Flores*, 507 U.S. at 314 n.9, 113 S.Ct. 1439 (rejecting another dissent's call for "fully individualized custody determinations"). The majority opted for a bright-line rule instead: the government can detain an alien for as long as deportation proceedings are still "pending." *Demore*, 538 U.S. at 527, 123 S.Ct. 1708 (majority opinion).

*Banyee*, 115 F.4th at 933.

For Begay Mayancha, like the petitioner in *Banyee*, the removal proceedings are still pending. *Id*.; Filing 1 at 6 (¶ 26) (acknowledging that his asylum order has been remanded). These circumstances leave no room for a multi-factor "reasonableness" test, even if deciding what process is due ordinarily requires a form of interest balancing. *Id*. "Congress may make rules as to aliens that would be unacceptable if applied to citizens," and "the government has more flexibility when dealing with immigration." *Id.* at 931 (internal quotation marks and citations omitted). Thus, the Court will not apply any balancing test to Begay Mayancha's due process claims.

**C. The Due Process Violations Alleged in Count One**

In Count One of his Petition, Begay Mayancha asserts Fifth Amendment due process violations based on (1) his detention restricting his liberty interest arising from his parole and his

asylum order by detaining him without constitutionally sufficient procedures; and (2) detention that is not likely to end in the reasonably foreseeable future. Filing 1 at 10–11. Neither version of this claim has merit.

*1. Violation of Due Process Based on Detention Despite Parole and Asylum*

a. The Parties' Arguments

Begay Mayancha contends that as a noncitizen conditionally paroled into the United States, he is analogous to a criminal parolee, and therefore is entitled to due process protections, including notice and an opportunity to be heard prior to revocation of parole. Filing 1 at 5-6 (¶¶ 22–23). Specifically, he contends that the due process clause of the Fifth Amendment prohibits the government from depriving a person of liberty without due process of law; that he was granted a liberty interest when he was paroled into the country; and that Respondents restricted that liberty interest by detaining him without constitutionally sufficient procedures, as measured by *Mathews v. Eldridge*, 424 U.S. 319 (1976), and/or *Sandhu v. Mullin*, No. 7:26CV5009, 2026 WL 1146643 (D. Neb. April 28, 2026). Filing 1 at 9–10 (¶¶ 36–39), 10 (¶¶ 41–44). Begay Mayancha contends that his interest in freedom from confinement is of the highest order, where he has been paroled and granted asylum; the risk of erroneous detention is acute where no neutral adjudicator has ever considered whether his detention is justified; and the obvious modest safeguard is a bond hearing before an IJ. Filing 1 at 10–11 (¶ 45). He also argues that his detention in not likely to end in the reasonable foreseeable future because further proceedings concerning asylum will result in detention not reasonably related to the purpose of effectuating his removal, in violation of *Zadvydas v. Davis*, 533 U.S. 678, 690, 699–700 (2001). Filing 1 at 11 (¶ 46).

Federal Respondents argue that Begay Mayancha fails to address the fact that his parole expired or was properly terminated without a hearing, but that even with active parole Begay Mayancha could be detained without bond or hearing under 8 U.S.C. § 1225 and *Avila v. Bondi*,

170 F.4th 1128 (8th Cir. 2026). Filing 7 at 1. Federal Respondents argue, as they often do in similar cases,

> Th[e] analysis [under *Avila*] is simple here. Petitioner is an "applicant for admission", which the statute defines as "[a]n alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). Because Petitioner is unlawfully present in the United States without admission, Petitioner's detention pending removal is mandatory. 8 U.S.C. § 1225(b)(2)(A).

Filing 7 at 5. They add, "Petitioner's prior parole status does not negate any of the elements of § 1225" because of the broad interpretation given § 1225 under *Avila* and because parole is not admission but only permission to be physically in the country for a limited time. Filing 7 at 5. Federal Respondents argue further that the IJ's order granting asylum was not final because it was appealed, so Begay Mayancha's continued detention after that order was proper. Filing 7 at 1 (citing 8 C.F.R. § 1003.39).

In reply, Begay Mayancha argues that despite the statement in his Form I-213 dated February 25, 2025, that his parole was "Revoke[d]" and he was detained pending removal proceedings, Filing 1-1 at 4, there is no evidence of an allegation of noncompliance with parole or any assessment of the necessity of detention. Filing 11 at 3. Begay Mayancha argues that the revocation of his parole on February 25, 2025, was without any process that would satisfy the *Mathews* three-factor test. Filing 11 at 4. He also argues that his Warrant for Arrest shows that he was arrested pursuant to 8 U.S.C. § 1226, which allows for a bond hearing, not pursuant to 8 U.S.C. § 1225, which does not, as Federal Respondents assert. Filing 11 at 3 (citing Filing 9-2). Begay Mayancha argues further that there is no evidence that his appeal expired on December 2025, only DO Archer's assertion, and there is no evidence that Begay Mayancha ever received notice that his parole would expire. Filing 11 at 3–4.

b. Begay Mayancha Was Properly Detained Despite His Parole and Asylum Order

i. Begay Mayancha Was Not Detained under § 1226

Although Begay Mayancha argues in passing that he was detained under § 1226 rather than § 1225, the Court must address that mistaken contention. Begay Mayancha contends that the warrant for his arrest, Filing 9-2, shows that he was detained under 8 U.S.C. § 1226(a) not § 1225(b)(2), so he is entitled to immediate release or at the very least an individualized bond hearing before an IJ. Filing 11 at 1.

The short answer to this contention is that the warrant does not indicate the statutory basis for Begay Mayancha's detention. The warrant directs "[a]ny immigration officer authorized pursuant sections 236 and 287 of the Immigration and Nationality Act [8 U.S.C. § 1226 and § 1357, respectively,] and part 287 of title 8, Code of Federal Regulations, to serve warrants for immigration violations . . . to arrest and take into custody [Begay Mayancha]" for the stated reason of "the pendency of ongoing removal proceedings against the subject." Filing 9-2 at 1. The reference to "[a]ny immigration officer authorized pursuant to 236 [§ 1226]" does not demonstrate that Begay Mayancha was detained pursuant to § 1226(a). Rather, it states that the immigration officer arresting the alien must be "authorized pursuant to section[ ] 236." Filing 13-2 at 1. Section 236 (§ 1226(a)) permits the arrest of an alien "[o]n a warrant issued by the Attorney General," but that authorization for arrest on a warrant does not establish that the alien is or is to be detained under § 1226(a) when arrested. 8 U.S.C. § 1226(a).

ii. Begay Mayancha's Detention Despite His Prior Parole and Asylum Order Does Not Violate Due Process

The Court also rejects Begay Mayancha's contention that he is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2) as explained in *Avila* because he was paroled into the United States by the government. Filing 11 at 1. Begay Mayancha's assertion finds no support in the

language of § 1225 as construed by the Eighth Circuit in *Avila*, because Begay Mayancha was still an "applicant for admission."

In *Avila*, the Eighth Circuit explained,

> In defining [applicant for admission], § 1225(a)(1) reads as follows:
>
> > An alien present in the United States who has not been admitted or who arrives in the United States ... shall be deemed for purposes of this chapter an applicant for admission.

*Avila*, 170 F.4th at 1133 (quoting § 1225(a)(1)). Begay Mayancha arrived in the United States at a port of entry and was not admitted, so he plainly fell within the definition of an "applicant for admission." *See* 8 U.S.C. § 1225(a)(1). As the Eighth Circuit explained further in *Avila*, "[Section] 1225(b)(2)(A) authorizes detention without bond for 'an alien who is an applicant for admission, if . . . an alien seeking admission is not clearly and beyond a doubt entitled to be admitted.'" *Avila*, 170 F.4th at 1132 (quoting § 1225(b)(2)). Thus, Begay Mayancha was subject to mandatory detention as an "applicant for admission." *Id.*

However, the Eighth Circuit also explained, "There is a narrow, discretionary exception to mandatory detention under § 1225(b)(2)(A) in 8 U.S.C. § 1182(d)(5)(A)." *Avila*, 170 F.4th at 1133 n.2. That statute provides,

> (5)(A) The Secretary of Homeland Security may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C.A. § 1182(d)(5)(A). "But DHS may only use this authority 'on a case-by-case basis for urgent humanitarian reasons or significant public benefit.'" *Avila*, 170 F.4th at 1133 n.2 (quoting *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 499 n.3 (5th Cir. 2026) (citation omitted).

Begay Mayancha's parole at the time of entry was pursuant to this narrow exception to mandatory detention under § 1225 set out in § 1182(d)(5)(A). However, parole pursuant to § 1182(d)(5)(A) does not change an alien's "applicant for admission" status because it is not admission. *See* 8 U.S.C. § 1101(a)(13)(B) (stating *inter alia* that "[a]n alien who is paroled under section 1182(d)(5) of this title . . . shall not be considered to have been admitted"). Indeed, § 1182(d)(5)(A) itself makes clear that when the purposes of such parole have been served, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). The applicable regulation likewise provides that upon termination of parole the alien "shall be restored to the status that he or she had at the time of parole." 8 C.F.R. § 212.5(e)(2)(i). Thus, Begay Mayancha remained an "applicant for admission"—his status at the time he was paroled—and was subject to mandatory detention under § 1225(b) once his parole ended. In other words, Begay Mayancha was a non-detained "applicant for admission" under a discrete exception to mandatory detention under § 1225(b)(2) set out in § 1182(d)(5)(A) and an applicable regulation, 8 C.F.R. § 212.5(e)(2), until his parole was terminated.

Section 1182(d)(5)(A) provides that upon termination of parole, an alien shall be returned to his or her prior status "forthwith"—that is, it states no requirement of notice to the alien of the end of his or her parole. 8 U.S.C. § 1182(d)(5)(A). Nevertheless, Begay Mayancha claims that

termination of parole without notice violates due process. He also points out that 8 C.F.R. § 215.5(e)(2)(i) requires written notice of termination of parole, even if the statute does not.

Begay Mayancha's parole has terminated or expired, and he received notice of that termination. According to DO Archer, Begay Mayancha's parole status expired by its terms on December 2, 2025. Filing 9 at 3 (¶ 13).[5] More importantly, prior to the date of expiration by its terms, Begay Mayancha had already received notice of termination of his parole. On December 2, 2023, the same date as Begay Mayancha's entry and parole, DHS also charged Begay Mayancha with removability under 8 U.S.C. § 1182(a)(7)(A)(i)(I) as an immigrant not in possession of a valid entry document. Filing 1-3 at 4 (Notice to Appear); Filing 9-1 at 4 (same). Begay Mayancha is correct that the applicable regulation requires "written notice" of termination of parole, but that regulation also provides that "[w]hen a charging document is served on the alien, the charging document will constitute written notice of termination of parole, unless otherwise specified." 8 C.F.R. § 212.5(e)(2)(i). Thus, at the time that Begay Mayancha was charged as a removable alien, Begay Mayancha received written notice of termination of his parole. *Id.*

Such a result is not "nonsensical" as Begay Mayancha asserts. Filing 11 at 4. Rather, Begay Mayancha's continued release after the December 2, 2023, charge with an immigration violation was pursuant to 8 C.F.R. § 212.5(e)(2)(i), which states, "If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the alien shall again be released on parole unless . . . the public interest requires that the alien be continued in custody." 8 C.F.R.

[5] Although Begay Mayancha complains that documentation of that termination apart from DO Archer's averment is lacking, Begay Mayancha puts the burden on the wrong party: It is his burden as the petitioner to establish his entitlement to habeas relief, including that he still enjoys parolee status, if that ultimately supported his claim. See Maldonado, 2025 WL 2374411, at *4 (explaining that courts agree that a habeas petitioner under § 2241 bears the burden of demonstrating by a preponderance of the evidence that his or her detention is unlawful (collecting cases)). Begay Mayancha has offered no evidence casting doubt on DO Archer's averment as to the expiration date of his parole.

§ 212.5(e)(2)(i). Thus, Begay Mayancha's parole after December 2, 2023, was because his exclusion, deportation, or removal could not be executed within a reasonable time.

The same regulation states that parole can be terminated when "neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States." 8 C.F.R. § 212.5(e)(2)(i). The regulation then states that the written notice of termination that it requires is provided by "the charging document," 8 C.F.R. § 212.5(e)(2)(i), which in this case was Begay Mayancha's Form I-862, Filing 1-3. Thus, Begay Mayancha had notice via his charging document from December 2, 2023, onward that he was subject to removal and that his parole could end at any time that DHS determined that an exclusion, deportation, or removal order could be executed within a reasonable time, eliminating the reasons warranting his continued presence in the United States. Begay Mayancha's I-213 Record of Deportable/Inadmissible Alien shows as the "disposition" of his arrest by DHS that his parole was "[r]evoked" on February 25, 2025, and he was detained pending removal proceedings, thus demonstrating that DHS had determined that a removal order could then be executed. Filing 1-2 at 4.

Not only is the alien returned to mandatory detention pursuant to § 1225(b) upon termination of parole, but the alien's "case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.* This language plainly means that the formerly paroled alien is treated like any other "applicant for admission" defined by § 1225(a) and the formerly paroled alien's case is treated in the same way as the case of any other alien under § 1225(b) who was not afforded discretionary parole under § 1182(d)(5)(A).

Begay Mayancha falls squarely within the scope of § 1225(b) and remained within its scope—that is, subject to detention without a bond hearing—because he is and remains an "applicant for admission" within the definition of § 1225(a). *See also Jennings v. Rodriguez*, 583

U.S. 281, 297 (2018) (explaining that "neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings"). Begay Mayancha's asylum order from the IJ stands as no impediment to his mandatory detention pursuant to § 1225(b)(2) at this point because that order has been remanded for reconsideration, as explained in more detail below. *See* Filing 1 at 6 (¶ 26) (acknowledging that Begay Mayancha's asylum order has been remanded).

Begay Mayancha has failed to carry his burden to show that his present detention despite his parole and asylum order entitled him to any relief on his first due process claim for habeas relief. *See* *Maldonado*, 2025 WL 2374411, at *4 (concluding that a petitioner under § 2241 bears the burden of demonstrating by a preponderance of the evidence that his or her detention is unlawful (collecting cases)).

2. *Violation of Due Process Based on Detention with No Reasonably Foreseeable End*

The second part of Begay Mayancha's due process claim in Count One is that his detention is not likely to end in the reasonably foreseeable future. Filing 1 at 11 (¶ 46). Begay Mayancha argues that this is so because he cannot be removed where he has prevailed on his asylum request and further proceedings on that request will likely lead to the same result, with protection from removal based on asylum, withholding, or under the Convention Against Torture. Filing 1 at 11 (¶ 46). He also asserts that his continued detention is not reasonably related to the purpose of removal. Filing 1 at 11 (¶ 46) (citing *Zadvydas v. Davis*, 533 U.S. 678 (2001)).

Federal Respondents do not respond to this contention, but the Court concludes that it misapplies *Zadvydas*. *Zadvydas* did not hold that the Fifth Amendment prohibits "prolonged" detention; it held that for aliens ordered removed, where detention threatens to be "indefinite," to avoid "serious constitutional concerns," the Supreme Court construed the statute permitting detention, that is, 8 U.S.C. § 1231(a)(6), "to contain an implicit a 'reasonable time' limitation [of

six months], the application of which is subject to federal-court review." *Zadydas*, 533 U.S. at 682. After that period of presumptively constitutional detention, an alien had to provide good reason to believe that there was no significant likelihood of removal in the reasonably foreseeable future to obtain release, and the Government had to be given the opportunity to rebut that showing. *Id.* at 701.

Begay Mayancha is in a quite different situation. First, he is not an alien ordered removed but one whose removal remains pending while the remand of his asylum application also remains pending. *See id.* at 682. Second, as the Eighth Circuit explained in *Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024), Begay Mayancha is not facing "indefinite" detention or even detention without a "reasonably foreseeable" end because his detention pending removal will definitely end, either with removal or release on asylum. *See Banyee*, 115 F.4th at 932. Third, there is no reason to believe at this time that Begay Mayancha's removal—if ultimately ordered—will not be accomplished within the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 701.

*3. Summary*

Begay Mayancha has failed to carry his burden to show that his detention during removal proceedings violates due process in the ways he alleges in Count One of his Petition. *See Maldonado*, 2025 WL 2374411, at *4 (concluding that a petitioner under § 2241 bears the burden of demonstrating by a preponderance of the evidence that his or her detention is unlawful (collecting cases)). Thus, he is not entitled to relief on Count One of his Petition.

**D. The Due Process Violation Alleged in Count Two**

In Count Two of his Petition, Begay Mayancha asserts another Fifth Amendment due process claim, this time based on his allegedly "unilateral" detention after the IJ granted him asylum. Filing 1 at 11. This claim is also without merit.

*1. The Parties' Arguments*

Begay Mayancha argues that after a noncitizen is granted asylum, he shall not be removed to his country of nationality, he shall be authorized to work in the United States, and he may be allowed to travel abroad with prior consent of the Attorney General, but even though he was granted asylum by the IJ on June 9, 2025, he was not released. Filing 1 at 11–12 (¶¶ 49–50). He asserts further that DHS did not seek a stay of the IJ's decision pending appeal. Filing 1 at 12 (¶ 52). Thus, he alleges that the unilateral decision to continue detention lasting over a year amounts to a violation of the due process clause. Filing 1 at 12 (¶ 54).

Federal Respondents argue that the IJ's asylum order was not final, because DHS appealed it and the BIA ultimately remanded for further proceedings. Filing 7 at 1 (citing 8 C.F.R. § 1003.39). Thus, Federal Respondents argue that Begay Mayancha's removal proceedings remained pending allowing his continued detention. Filing 7 at 1, Federal Respondents argue again that Congress made the decision to detain Petitioner pending removal, which is a constitutionally permissible part of the removal process. Filing 7 at 11.

In reply, Begay Mayancha rejects Federal Respondents' contention because he argues that there has been no consideration of the necessity of ongoing detention. Filing 11 at 6. He also argues that such detention is contrary to regulations governing termination of asylum and re-detention for removal. Filing 11 at 5 (citing 8 C.F.R. §§ 208.22, 208.22). He reiterates that DHS did not seek a stay of the asylum order pending appeal. Filing 11 at 6.

*2. Begay Mayancha's Claim of Detention After the Asylum Order Is Moot*

The Court concludes that Begay Mayancha's claim in Count Two fails for a different reason than any asserted by Federal Respondents. The Court concludes that this claim is in fact moot, so that the Court lacks subject-matter jurisdiction over it.

Federal courts "have an independent obligation to assure ourselves of subject-matter jurisdiction." *Gallagher v. Santander Consumer USA, Inc.*, 125 F.4th 865, 867 (8th Cir. 2025) (quoting *Hekel v. Hunter Warfield, Inc.*, 118 F.4th 938, 941 (8th Cir. 2024)); *Oglala Sioux Tribe v. Fleming*, 904 F.3d 603, 609 (8th Cir. 2018) (explaining that a court "ha[s] an independent obligation to determine whether subject-matter jurisdiction exists before proceeding to the merits"); *Sianis v. Jensen*, 294 F.3d 994, 997 (8th Cir. 2002) ("Subject matter jurisdiction is a threshold matter that [courts] are obligated to address at the outset." (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998))). Consequently, the Court must *sua sponte* assess whether it has subject-matter jurisdiction over a claim, even if the issue was not raised by the parties. *See Oglala Sioux Tribe*, 904 F.3d at 609; *Lee v. Sanders*, 943 F.3d 1145, 1148 (8th Cir. 2019) ("[W]hen a requirement goes to subject-matter jurisdiction, courts are obligated to consider sua sponte issues that the parties have disclaimed or have not presented." (quoting *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012)).

The basis for the Court's subject-matter jurisdiction concern is mootness of this claim. "Constitutional mootness is jurisdictional and derives from the case-or-controversy requirement of Article III." *Humphrey v. Christopher*, 146 F.4th 682, 689 (8th Cir. 2025) (quoting *In re Stanford*, 17 F.4th 116, 121 (11th Cir. 2021)). Thus,

> "[i]f the issues presented are no longer live or the parties lack a cognizable interest in the outcome, a case or controversy under Article III no longer exists because the litigation has become moot." *Allan v. Minnesota Dep't of Hum. Servs.*, 127 F.4th 717, 720 (8th Cir. 2025). A case is moot "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Cardiovascular Sys., Inc. v. Cardio Flow, Inc.*, 37 F.4th 1357, 1362 (8th Cir. 2022).

*Sorcan v. Rock Ridge Sch. Dist.*, 131 F.4th 646, 649–50 (8th Cir. 2025). To put it another way, "a party loses a cognizable interest when changed circumstances already provide the requested relief and eliminate the need for court action." *Allan v. Minnesota Dep't of Hum. Servs.*, 127 F.4th 717,

720 (8th Cir. 2025) (quoting *Brazil v. Ark. Dep't of Hum. Servs.*, 892 F.3d 957, 959 (8th Cir. 2018) (internal quotation marks omitted)).

Begay Mayancha's claim that DHS improperly continued his detention after the IJ granted him asylum is moot because of changed circumstances. *Id.* DHS's appeal of the asylum order has been remanded by the BIA to the IJ, so Begay Mayancha's current detention is not because of an improper refusal to give him the relief ordered by the IJ in the first instance. His current detention is because his asylum application is back before the immigration court for reconsideration. Detention of an alien pending removal proceedings is proper. *See* 8 U.S.C. § 1225(b)(2); *Jennings*, 583 U.S. at 297 (observing that § 1225 has no bond provision); *Avila*, 170 F.4th at 1132 ("[Section] 1225(b)(2)(A) authorizes detention without bond for 'an alien who is an applicant for admission, if . . . an alien seeking admission is not clearly and beyond a doubt entitled to be admitted.'"). Thus, the Court cannot order the relief desired, which was release from detention pending appeal of the asylum order. *See Sorcan*, 131 F.4th at 650 ("A case is moot 'only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" (quoting *Cardiovascular Sys., Inc.*, 37 F.4th at 1362)).[6]

Therefore, the Court denies Begay Mayancha's claim in Count Two as moot.

## III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that Petitioner Abdon Danilo Begay Mayancha's Verified Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, Filing 1, is denied in its entirety as follows:

[6] The Court's inability to grant release from detention pending appeal of the asylum order means that this claim is also no longer a cognizable claim for habeas relief. As the Court pointed out above, "Habeas is at its core a remedy for unlawful executive detention." *Manaf*, 553 U.S. at 693 (citing *Hamdi*, 542 U.S. at 536 (plurality opinion)). To put it another way, "Habeas has traditionally been a means to secure release from unlawful detention. . . ." *Thuraissigiam*, 591 U.S. at 107. Where there is no detention for the improper reason alleged, there can be no release from unlawful detention within the meaning of § 2241(c)(3) or these decisions.

1. Count One of the Petition is denied for lack of merit; and

2. Count Two is denied for lack of subject-matter jurisdiction as moot.

The Clerk of Court shall close the case.

Dated this 27th day of October, 2026.

BY THE COURT:

Brian C. Buescher
Chief United States District Judge